JUDGE NATHAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY FAIG, Individually and on Behalf of All Other Persons Similarly Situated, | **13 CV 6922** Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| BIOSCRIP, INC., RICHARD M. SMITH, HAI V. TRAN, MARY JANE GRAVES, and PATRICIA BOGUSZ, | |
| Defendants. | **JURY TRIAL DEMANDED** |

RECEIVED
SEP 30 2013
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff Timothy Faig ("Faig"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding BioScrip, Inc. ("BioScrip" or the "Company"), analyst reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased BioScrip securities between August 8, 2011 and September 20, 2013, inclusive (the "Class Period"), seeking to recover damages caused by

defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against the Company and certain of its top officials.

2.      BioScrip is a pharmacy benefit management and specialty pharmaceutical organization that partners with managed care organizations and healthcare providers to manage prescription drug costs.  The Company provides pharmacy benefit products and services and mail order pharmacy services, and is the fulfillment center for online retailers offering prescription and OTC products.

3.      On September 23, 2013, the Company announced in a Form 8-K, that it received a civil investigative demand issued by the United States Attorney's Office for the Southern District of New York and a subpoena from the New York State Attorney General's Medicaid Fraud Control Unit, regarding the distribution of the Novartis Pharmaceuticals Corporation product Exjade by the Company's legacy specialty pharmacy division.

4.      On this news, BioScrip securities declined $2.60 per share or 23% within two trading sessions, to close at $8.47 per share on September 24, 2013.

5.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company improperly distributed the product Exjade through its specialty pharmacy operations, in violation of the False Claims Act and other federal and state statutes; and (2) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

9.     Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b) as the securities of BioScrip were publicly traded in this District.

10.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11.     Plaintiff, as set forth in the attached certification, purchased BioScrip securities at artificially inflated prices during the Class Period and has been damaged thereby.

12.     Defendant BioScrip is a Delaware corporation with its executive offices located at 100 Clearbrook Road, Elmsford, NY 10523.  The common stock is traded on the NASDAQ Global Stock Market ("NASDAQ") under the ticker symbol "BIOS."

13.     Defendant Richard M. Smith ("Smith") was, at all relevant times, has been the Company's President and Chief Executive Officer.

3

14.     Defendant Hai V. Tran ("Tran") has been the Company's Senior Vice President, Chief Financial Officer and Treasurer since May 14, 2012.

15.     Defendant Mary Jane Graves ("Graves") was the Company's Interim Chief Financial Officer and Treasurer between January 2011 and May 2012.

16.     Defendant Patricia Bogusz ("Bogusz") was, at all relevant times, has been the Company's Vice President of Finance.

17.     The defendants referenced above in ¶¶ 13 – 16 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18.     BioScrip is a national provider of home infusion and other home healthcare services that partners with patients, physicians, hospitals, healthcare payors and pharmaceutical manufacturers to provide clinical management solutions and the delivery of cost-effective access to prescription medications and home healthcare services.  The Company's services designed to improve clinical outcomes to patients with chronic and acute healthcare conditions while controlling overall healthcare costs.

### Materially False and Misleading
### Statements Issued During the Class Period

19.     On August 8, 2011, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2011.  For the quarter, the Company reported net loss of $2.3 million, or ($0.04) diluted earnings per share ("EPS") and total revenue of $441.4 million, compared to net income of $3.1 million, or $0.06 diluted EPS and total revenue of $412 million for the same period a year ago.

4

20.    On August 9, 2011, the Company filed a quarterly report for the period ended June 30, 2011 on a Form 10-Q with the SEC signed by Defendant Bogusz, which reiterated the Company's previously reported financial results and financial position.  In addition, the Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Smith and Graves stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

21.    On November 8, 2011, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2011.  For the quarter, the Company reported net income of $548,000, or $0.01 diluted EPS and total revenue of $454 million, compared to net income of $2 million, or $0.04 diluted EPS and total revenue of $441.2 million for the same period a year ago.

22.    On November 9, 2011, the Company filed a quarterly report for the period ended September 30, 2011 on a Form 10-Q with the SEC signed by Defendant Bogusz, which reiterated the Company's previously reported financial results and financial position.    In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Smith and Graves stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

23.    On March 9, 2012, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2011.  For the quarter, the Company reported net income of $6.7 million, or $0.12 diluted EPS and total revenue of $483.3 million, compared to net loss of $67 million, or ($1.25) diluted EPS and total revenue of $450.4 million for the same period a year ago.  For the year, the Company reported net income of $7.9 million,

or $0.14 diluted EPS and total revenue of $1.8 billion, compared to net loss of $69.1 million, or

($1.37) diluted EPS and total revenue of $1.6 billion for the same period a year ago.

24.    On March 14, 2012, the Company filed an annual report for the year ended

December 31, 2011 on a Form 10-K with the SEC signed by, among others, Defendants Smith

and Graves, which reiterated the Company's previously reported financial results and financial

position.   In addition, the Form 10-K contained signed certifications pursuant to SOX by

Defendants Smith and Graves stating that the financial information contained in the Form 10-K

was accurate, and disclosed any material changes to the Company's internal control over

financial reporting.

25.    The Form 10-K stated the following in relevant part concerning regulation of the

pharmacy industry:

> Every state's laws require our pharmacy locations in those states be licensed as an
> in-state pharmacy to dispense pharmaceuticals. State controlled substance laws
> require registration and compliance with state pharmacy licensure, registration or
> permit standards promulgated by the state's pharmacy licensing authority.
> Pharmacy and controlled substances laws often address the qualification of an
> applicant's personnel, the adequacy of its prescription fulfillment and inventory
> control practices and the adequacy of its facilities. In general, pharmacy licenses
> are renewed annually. Our management believes our pharmacy locations
> materially comply with all state licensing laws applicable to these businesses. If
> our pharmacy locations become subject to additional licensure requirements, are
> unable to maintain their required licenses or if states place burdensome
> restrictions or limitations on pharmacies, our ability to operate in some states
> would be limited, which could have an adverse impact on our business. We
> believe the impact of any such requirements would be mitigated by our ability to
> shift business among our numerous locations.
>
> Many of the states into which we deliver pharmaceuticals have laws and
> regulations that require out-of-state mail service pharmacies to register with, or be
> licensed by, the boards of pharmacy or similar regulatory bodies in those states.
> These states generally permit the dispensing pharmacy to follow the laws of the
> state within which the dispensing pharmacy is located. However, various state
> pharmacy boards have enacted laws and/or adopted rules or regulations directed
> at restricting or prohibiting the operation of out-of-state pharmacies by, among
> other things, requiring compliance with all laws of the states into which the out-

of-state pharmacy dispenses medications, whether or not those laws conflict with the laws of the state in which the pharmacy is located, or requiring the pharmacist-in-charge to be licensed in that state. To the extent that such laws or regulations are found to be applicable to our operations, we believe we comply with them. To the extent that any of the foregoing laws or regulations prohibit or restrict the operation of mail service pharmacies and are found to be applicable to us, they could have an adverse effect on our prescription mail service operations.

            *              *             *

There are other statutes and regulations which may also affect our mail service operations. The U.S. Federal Trade Commission requires mail order sellers of goods generally to engage in truthful advertising, to stock a reasonable supply of the products to be sold, to fill mail orders within 30 days, and to provide clients with refunds when appropriate.

26.     On May 9, 2012, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2012. For the quarter, the Company reported net loss of $2.7 million, or ($0.05) diluted EPS and total revenue of $155.6 million, compared to net income of $2.9 million, or $0.05 diluted EPS and total revenue of $130.8 million for the same period a year ago.

27.     On May 10, 2012, the Company filed a quarterly report for the period ended March 31, 2012 on a Form 10-Q with the SEC signed by Defendant Bogusz, which reiterated the Company's previously reported financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Smith and Graves, stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

28.     On August 8, 2012, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2012. For the quarter, the Company reported net income of $71.8 million, or $1.29 diluted EPS and total revenue of $155.9 million, compared to net loss of $2.3 million, or $0.04 diluted EPS and total revenue of $131.6 million for the same period a year ago.

29.     On August 9, 2012, the Company filed a quarterly report for the period ended June 30, 2012 on a Form 10-Q with the SEC signed by Defendant Bogusz, which reiterated the Company's previously reported financial results and financial position.  In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Smith and Tran stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

30.     On November 7, 2012, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2012.  For the quarter, the Company reported a net loss of $11.5 million, or ($0.20) diluted EPS and total revenue of $170.4 million, compared to net income of $548,000, or $0.01 diluted EPS and total revenue of $133.8 million, for the same period a year ago.

31.     On November 9, 2012, the Company filed a quarterly report for the period ended September 30, 2012 on a Form 10-Q with the SEC signed by Defendant Bogusz, which reiterated the Company's previously reported financial results and financial position.   In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Smith and Tran stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

32.     On March 11, 2013, the Company issued a press release announcing its financial results for the fourth quarter and year ended December 31, 2012.  For the quarter, the Company reported net income of $7.2 million, or $0.12 diluted EPS and total revenue of $180.7 million, compared to net income of $6.7 million, or $0.12 diluted EPS and total revenue of $158.3 million for the same period a year ago.  For the year, the Company reported net income of $64.7,

million or $1.15 diluted EPS and total revenue of 662.6 million, compared to net income of $7.9 million, or $0.14 diluted EPS and total revenue of $554.5 million for the same period a year ago.

33.    On March 15, 2013, the Company filed an annual report for the year ended December 31, 2012 on a Form 10-K with the SEC signed by, among others, Defendants Smith and Tran, which reiterated the Company's previously reported financial results and financial position.    In addition, the Form 10-K contained signed certifications pursuant to SOX by Defendants Smith and Tran stating that the financial information contained in the Form 10-K was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

34.    The Form 10-K stated the following in relevant part concerning regulation of the pharmacy industry:

> Every state's laws require our pharmacy locations in those states be licensed as an in-state pharmacy to dispense pharmaceuticals. State controlled substance laws require registration and compliance with state pharmacy licensure, registration or permit standards promulgated by the state's pharmacy licensing authority. Pharmacy and controlled substances laws often address the qualification of an applicant's personnel, the adequacy of its prescription fulfillment and inventory control practices and the adequacy of its facilities. In general, pharmacy licenses are renewed annually. We believe our pharmacy locations materially comply with all state licensing laws applicable to these businesses. If our pharmacy locations become subject to additional licensure requirements, are unable to maintain their required licenses or if states place burdensome restrictions or limitations on pharmacies, our ability to operate in some states would be limited, which could have an adverse impact on our business. We believe the impact of any such requirements would be mitigated by our ability to shift business among our numerous locations.

> Many states, as well as the federal government, are considering imposing, or have already begun to impose, more stringent requirements on compounding pharmacies. (See also Food, Drug, and Cosmetic Act, below). We believe that our compounding is done in safe environments and we have clinically appropriate policies and procedures in place. We only compound pursuant to a patient specific prescription and do so in compliance with USP 797 standards. We cannot predict the impact of increased scrutiny on or regulation of compounding pharmacies.

9

Many of the states into which we deliver pharmaceuticals have laws and regulations that require out-of-state pharmacies to register with, or be licensed by, the boards of pharmacy or similar regulatory bodies in those states. These states generally permit the dispensing pharmacy to follow the laws of the state within which the dispensing pharmacy is located. However, various state pharmacy boards have enacted laws and/or adopted rules or regulations directed at restricting or prohibiting the operation of out-of-state pharmacies by, among other things, requiring compliance with all laws of the states into which the out-of-state pharmacy dispenses medications, whether or not those laws conflict with the laws of the state in which the pharmacy is located, or requiring the pharmacist-in-charge to be licensed in that state. To the extent that such laws or regulations are found to be applicable to our operations, we believe we comply with them. To the extent that any of the foregoing laws or regulations prohibit or restrict the operation of out-of-state pharmacies and are found to be applicable to us, they could have an adverse effect on our operations.

35.    The statements referenced in ¶¶ 19 - 34 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them that: (1) the Company improperly distributed the product Exjade through its specialty pharmacy operations; (2) a substantial portion of the Company's revenues were derived through the violation of federal and state laws and regulations; and (3) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

## THE TRUTH EMERGES

36.    On September 23, 2013, the Company filed a Form 8-K with the SEC disclosing the following in relevant part:

The Company sold its traditional and specialty pharmacy mail operations and community retail pharmacy stores on May 4, 2012. Pursuant to a civil investigative demand issued by the United States Attorney's Office for the Southern District of New York and a subpoena from the New York State Attorney General's Medicaid Fraud Control Unit, the Company has cooperated by producing documents and information regarding the distribution of the Novartis Pharmaceuticals Corporation product Exjade by the Company's legacy specialty pharmacy division that was divested.

On September 11, 2013, the Company was advised by the government that it plans to engage in discussions with the Company regarding its investigation. The investigation is civil in nature. To the Company's knowledge, no proceedings have been initiated against it at this time. The Company cannot predict or determine the timing or outcome of this investigation or the impact it may have, if any, on the Company's financial condition, results of operations or cash flows.

37.     On this news, BioScrip securities declined $2.60 per share or 23% within two trading sessions, to close at $8.47 per share on September 24, 2013.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired BioScrip securities during the Class Period (the "Class"); and were damaged thereby. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

39.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, BioScrip securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by BioScrip or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

41.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of BioScrip;

- whether the Individual Defendants caused BioScrip to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of BioScrip securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

44.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- BioScrip securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold BioScrip securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

48.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of BioScrip securities; and (iii) cause Plaintiff and other members of the Class to purchase BioScrip securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

49.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for BioScrip securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about BioScrip's finances and business prospects.

50.     By virtue of their positions at BioScrip, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

14

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

51.    Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of BioScrip, the Individual Defendants had knowledge of the details of BioScrip internal affairs.

52.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of BioScrip. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to BioScrip's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of BioScrip securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning BioScrip's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased BioScrip securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

53.     During the Class Period, BioScrip securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of BioScrip securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased said securities, or would not have purchased them at the inflated prices that were paid.  At the time of the purchases by Plaintiff and the Class, the true value of BioScrip securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of BioScrip securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

54.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

56.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

16

57.    During the Class Period, the Individual Defendants participated in the operation and management of BioScrip, and conducted and participated, directly and indirectly, in the conduct of BioScrip's business affairs.  Because of their senior positions, they knew the adverse non-public information about BioScrip's misstatement of income and expenses and false financial statements.

58.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to BioScrip's financial condition and results of operations, and to correct promptly any public statements issued by BioScrip which had become materially false or misleading.

59.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which BioScrip disseminated in the marketplace during the Class Period concerning BioScrip's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause BioScrip to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of BioScrip within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of BioScrip securities.

60.    Each of the Individual Defendants, therefore, acted as a controlling person of BioScrip.  By reason of their senior management positions and/or being directors of BioScrip, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, BioScrip to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of BioScrip and possessed

the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

61.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by BioScrip.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 30, 2013

POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP

_____
Jeremy A. Lieberman
Lesley F. Portnoy
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
lfportnoy@pomlaw.com

18

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I,    Timothy Fais            , make this declaration pursuant to Section
27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange
Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against BioScrip, Inc. ("BioScrip" or the "Company"), and authorize
the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire BioScrip securities at the direction of plaintiffs counsel or in order to
participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or
acquired BioScrip securities during the class period, including providing testimony at deposition and trial, if
necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in BioScrip
securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not
sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set
forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses
directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed __9/26/2013__
             (Date)

_____
(Signature)

__Timothy Faig__
(Type or Print Name)

## SUMMARY OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| 9/16/2013 | Purchase | 220 | $ 11.50 |
| 9/20/2013 | Purchase | 223 | $ 11.0993 |
| 9/23/2013 | Purchase | 230 | $ 10.19 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |