USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUN 0 5 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE BIOSCRIP, INC. SECURITIES LITIG.

13-CV-6922 (AJN)

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

This is a securities class action brought on behalf of all persons and entities who purchased or acquired the publicly traded common stock of BioScrip, Inc. ("BioScrip" or the "Company") between November 9, 2012 and November 6, 2013. The Plaintiffs, Fresno County Employees' Retirement Association and the West Palm Beach Police Pension Fund (collectively, the "Plaintiffs"), allege two distinct frauds perpetrated by BioScrip and the other Defendants during the time period at issue. The first concerns BioScrip's failure to disclose possible violations of the Anti-Kickback Statute and False Claims Act by BioScrip's specialty pharmacy division (the "Exjade Scheme"), while the second involves the Company's failure to reveal that one of its most profitable business segments, PBM Services, was in the process of collapsing (the "PBM Services Scheme"). On March 31, 2015, the Court granted in part and denied in part two motions to dismiss the Consolidated Class Action Complaint ("CCAC"). *See* Dkt. No. 68 (the "Order"). Briefly summarized, the Order allowed the Plaintiffs to proceed with certain claims pertaining to the Exjade Scheme under § 11 and § 12(a)(2) of the Securities Act and § 10(b) of the Exchange Act. *Id.* at 29, 44. The Order dismissed all of Plaintiffs' PBM Services Scheme claims falling under the Exchange Act and further dismissed all of the PBM Services Scheme

1

claims under § 11 and § 12(a)(2) of the Securities Act save for those relating to an April 2013 public offering. *Id.* at 39, 46.

Defendants now move for partial reconsideration of the Order, exclusively with respect to the remaining PBM Services Scheme claim under the Securities Act. *See* Dkt. No. 75. For the reasons below, Defendants' motion is DENIED.

## I. BACKGROUND

The Court presumes general familiarity with the facts of the case.[1] For purposes of the present motion, the Court focuses primarily on those facts relating to the alleged PBM Services Scheme.

During the time at issue in this lawsuit, BioScrip operated a number of distinct business segments, including a pharmacy benefit management service ("PBM Services"). *See* Dkt. No. 47, Ex. B at S-2. BioScrip's PBM Services segment primarily focused on promoting discount cash-card programs to individuals who were either uninsured or underinsured and whose insurance did not cover their medications. *See* CCAC ¶ 103. PBM Services constituted a significant area of revenue for BioScrip, providing over 20 percent of the company's total revenue in 2011 and 17 percent in 2012. *Id.* ¶ 106. According to Plaintiffs, BioScrip frequently represented PBM Services to investors as a reliable source of cash or an attractive segment for divestment. *Id.* ¶¶ 108-109. On March 11, 2013, BioScrip reported that PBM Services had generated $111.9 million in revenue in 2012. *Id.* ¶ 111. However, within several weeks of this announcement, PBM Services began suffering a number of setbacks, including the loss of a major client accounting for approximately $8 to $10 million, or nearly a third, of PBM Services revenue per quarter. *Id.* ¶ 112. Simultaneously, according to the pleadings, BioScrip's discount-

---

[1] A more complete description of the facts underlying the case can be found in the Court's March 31, 2015 Order. *See* Dkt. No. 68.

card brokers were reducing or delaying their marketing of discount cards, causing the number of card sales to drop. *Id.* Plaintiffs have alleged that BioScrip was aware of these problems in early 2013, but did not begin disclosing the true extent and nature of the difficulties until August 2013. *Id.* ¶¶ 114-120. In the interim, BioScrip held a public offering on or about April 19, 2013 (the "April 2013 Offering"). *Id.* ¶ 15.

On August 7, 2013, the Company reported that it had significantly missed second quarter revenue estimates. *Id.* ¶ 120. The gap was primarily ascribed to the $10.4 million decline in revenue from the PBM Services segment, which was in turn described as being due to "the loss of one low-margin client" as well as a "decline in discount card volume . . . due to a decrease in marketing from certain distribution partners." *Id.* During a subsequent earnings call, BioScrip revealed that $9.1 million of the $10.4 million drop was attributable solely to the one lost client. *Id.* ¶ 122.

In its prior Order, the Court dismissed the majority of Plaintiffs' claims concerning the PBM Services Scheme. First, addressing Plaintiffs' Rule 10b-5 and § 10 claims, the Court dismissed those claims relating to statements made by BioScrip officers about the PBM Services segment made after August 2013 because Plaintiffs failed to adequately allege that they constituted materially misleading statements or omissions. Some of these statements, such as BioScrip Chief Financial Officer and Treasurer Hai V. Tran's statement in August 2013 that PBM Services revenue was likely to be flat between the second and third quarter of 2013, were found to be literally true, and therefore not actionable. *See* Order at 31. The Court further concluded that Plaintiffs had failed to adequately allege or explain how other statements, such as BioScrip's statement that it "continued to see utilization of discount cards, as well as interest from patients and new distribution partners," were untrue. *See id.* at 32. Finally, the Court

concluded that Plaintiffs had failed to adequately allege that certain forward-looking statements made by Tran and BioScrip Chief Executive Officer Richard M. Smith in August 2013 were either disbelieved at the time, untrue, or relied upon an omitted fact that would have conflicted with those presumed by a reasonable investor hearing the statement. *Id.*

While the Court concluded that Plaintiffs had failed to adequately allege that the post-August 2013 statements were materially misleading statement or omissions, it concluded that the Plaintiffs had adequately alleged that a number of statements preceding BioScrip's August 2013 disclosures were in fact misleading. For instance, during a May 2013 investor call, Tran stated that PBM Services revenue going forward would be "relatively flat." *See* CCAC ¶ 164. The Court concluded that that Plaintiffs had adequately alleged that this was misleading because, by the time of the May 2013 investor call, the Company was aware of the fact that it had lost a highly valuable PBM Services client. *See* Order at 33. Indeed, second quarter revenue in the segment fell by 39 percent according to the CAC. *See* CCAC ¶ 169.

The Defendants raised two arguments as to why this statement was not misleading. First, they contended that it was a forward-looking statement accompanied by cautionary language. The Court rejected that argument, determining that any cautionary language provided by BioScrip about future risk could not, at the motion to dismiss stage, insulate them from liability for failing to disclose potential risks that had already come to pass. *See* Order at 33. Indeed, the Court further noted that, applying the motion to dismiss standard, BioScrip's cautionary language was, if anything, misleading in light of the fact that it bespoke caution concerning events that had already occurred. *See id.* at 33-34. The Defendants next tried to argue that, because BioScrip lost its major PBM Services client after its previous quarterly filing, it had no duty to disclose the loss until its next quarterly report. The Court acknowledged that it is often

the case that parties have no obligation to disclose intra-quarter setbacks. *Id.* at 34. However, the Order went on to explain that that is not the case when a party elects to make a statement that would be misleading absent the corrective disclosure. *Id.* Indeed, the complaint alleges that BioScrip had affirmatively stated that it anticipated "relatively flat" revenue from PBM Services in the second quarter of 2013, despite the fact that it had already lost a major client in that segment. Accordingly, Plaintiffs were deemed to have adequately alleged that the statement was misleading. *Id.*

Although Plaintiffs adequately alleged a material misstatement or omission regarding the pre-August 2013 PBM Services statements, the Court ultimately determined that Plaintiffs had failed to adequately allege scienter for these claims, as required by Rule 10b-5 and § 10. As a result, all of Plaintiffs' Exchange Act claims relating to PBM Services were dismissed. *Id.* at 39.

The Court then proceeded to address Plaintiffs' PBM Services Scheme claims brought under § 11 and § 12(a)(2) of the Securities Act, which do not require scienter. These are the claims at issue in the present motion for reconsideration. Plaintiffs alleged, first, that the April 2013 offering materials omitted material facts regarding BioScrip's PBM Services segment, including the loss of a major PBM Services client and reduced sales of discount-cards by BioScrip's brokers. *See* CCAC ¶ 307. Next, Plaintiffs argued that those omissions rendered misleading BioScrip's statement in its April 2013 offering materials that "[t]he loss of a relationship with one or more of [their] discount card brokers could negatively impact [their] business." *Id.* ¶ 308-309. In rejecting Defendants' request to dismiss these claims, the Court wrote

> For the same reasons discussed above, Plaintiffs have adequately alleged that it was misstatement for BioScrip to suggest that it was unaware of any broker's intention to terminate or not renew an agreement with BioScrip, in light of the fact that weeks earlier

5

> BioScrip had lost a client that provided nearly *one third* of their PBM Services revenue. [Footnote: *See supra* Section 1.B.1.]

*See* Order at 45.

It is with this particular conclusion that Defendants take umbrage. They argue in their motion for reconsideration that the Court inadvertently conflated the distinction between PBM Services brokers, who marketed discount cards to uninsured and underinsured individuals, and PBM Services clients, who were usually employers or third party administrators of benefit plans. *See* Def.'s Mem. at 2.

Finally, the prior Order dismissed Plaintiffs' claims relating to an August 2013 public offering by the Company, because, *inter alia*, by that time BioScrip had disclosed the losses it was suffering due to the loss of the PBM Services client. *See* Order at 46; CAC ¶¶ 120-122. In sum, the Court dismissed all of Plaintiffs' PBM Services Scheme claims save for those Securities Act claims relating to the April 2013 Offering specifically. Defendants now seek reconsideration of that particular determination. If granted, that reconsideration would result in the dismissal of all the PBM Services Scheme claims and leave Plaintiffs only with those Exjade Scheme claims not dismissed in the prior Order.

## II.   LEGAL STANDARD

A motion for reconsideration is governed by Local Rule 6.3 and is appropriate where "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry*, 583 F. Supp. 2d 461, 463 (S.D.N.Y. 2008). *See also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Local Rule 6.3 must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Van Cleef*, 583 F. Supp. 2d at 463 (citing *DGM*

*Investments, Inc. v. New York Futures Exch., Inc.*, 288 F. Supp. 2d 519, 523 (S.D.N.Y. 2003)). A court will deny the motion when the movant "seeks solely to relitigate an issue already decided." *Shrader,* 70 F.3d at 257. Furthermore, new arguments are inappropriate on a motion for reconsideration. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos., Inc.*, 265 F.3d 97, 115 (2d Cir. 2001) (noting that under Local Rule 6.3, a plaintiff may not raise a new argument for the first time in a motion for reconsideration).

### III. DISCUSSION

Defendants contend that the Court inadvertently conflated the "crucial distinction between PBM discount card brokers and funded PBM business clients." *See* Def.'s Mem. at 5. More importantly, Defendants insist that, taking that crucial distinction into account, Plaintiffs are unable to sustain a claim under § 11 or § 12(a)(2) of the Securities Act. *Id.* Defendants are incorrect and their motion must be denied.

Defendants' argument rests on the theory that, when taking account of PBM Services clients and brokers as separate entities, Plaintiffs are unable to plausibly allege that the April 2013 Offering materials contained a material misstatement or omission that would give rise to liability under § 11 or § 12(a)(2) of the Securities Act. The shortcoming with this argument is that it fails to account for the broad scope of the Court's inquiry when determining whether to dismiss claims under the Securities Act. As the Court stated in its prior Order, "[o]n a Rule 12(b)(6) motion, a district court may consider 'the complaint documents attached to the complaint as exhibits, and documents incorporated by reference to the complaint.'" *See* Order at 12. *See also DiFolco v. MSNBC Cable, LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

7

Indeed, not only *may* the Court consider such documents attached to the complaint, but where a plaintiff's "claims in a securities fraud complaint are based upon alleged misrepresentations and omissions contained in the prospectuses and other offering materials, those documents are 'integral to the complaint and *must be examined* together with the allegations contained on the face of the Complaint.'" *Backhaus v. Streamedia Commc'ns, Inc.*, 01-cv-4889 (LMM) (THK), 2002 WL 1870272, at *3 (S.D.N.Y. Aug. 14, 2002) (quoting *In re Alliance North Am. Gov't Income Trust, Inc. Sec. Litig.*, No. 95 Civ. 0330, 1996 WL 551732, at *2 (S.D.N.Y. Sept. 27, 1996)) (emphasis added). *See also I. Meyer Pincus & Associates, P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) (citing *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985)) ("In considering whether [a] complaint states a claim under either Section 10(b) or Section 11, we examine the prospectus together with the allegations contained on the face of the complaint. We do so despite [Plaintiff's] failure to submit the prospectus as an exhibit to the complaint, and despite the fact that the complaint contains only 'limited quotation' from that document."); *Lowinger v. Pzena Inv. Mgmt., Inc.*, 341 F. App'x 717, 718 (2d Cir. 2009) (same); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (holding that the court may take into account a document integral to the complaint in deciding a defendant's motion to dismiss, without converting the proceeding into one for summary judgment). In sum, "[t]he Prospectus must be read as a whole to determine whether any statements would mislead a reasonable investor." *Backhaus*, 2002 WL 1870272, at *4 (citing *In re AMF Bowling Sec. Litig.*, 99-cv-3023, 2001 WL 286758, at *4 (S.D.N.Y. Mar. 23, 2001)).

Under this posture, it is clear that Plaintiffs have adequately alleged an actionable misstatement or omission regarding BioScrip's April 2013 Offering materials and its representations concerning the Company's PBM Services segment. As the pleadings allege, by

the time of the April 19, 2013 offering, BioScrip's PBM Services segment was experiencing significant setbacks, including the loss of a client whose business comprised one third of the segment's total revenue. *See* CCAC ¶¶ 14, 112, 117, 119, 307, 309. At the same time, it is alleged, the Company was selling reduced volumes of discount cards to uninsured and underinsured individuals. *See id.* ¶¶ 4, 112, 114, 117, 165, 307-10. The complaint alleges that neither of these difficulties were disclosed at the time of the April 2013 Offering. *See id.* ¶¶ 15, 16, 120, 135, 159, 307-310. Nonetheless, the Preliminary Prospect Supplement, filed with the SEC on April 16, 2013, made several statements about the then-present state of the PBM Services segment. For instance, in the 'Risk Factors' section, it stated

> Our contracts with PBM clients generally do not have terms longer than three years and, in some cases, may be terminated by the client on relatively short notice, typically 90 days. Our PBM clients generally seek bids from other PBM or specialty providers in advance of the expiration of their contracts. If several of these clients elect not to extend their relationship with us, and we are not successful in generating sales to replace the lost business, **our future business and operating results could be materially and adversely affected.** In addition, we believe the managed care industry is undergoing substantial consolidation and another party that is not our client could acquire some of our managed care clients. In such case, **there is a risk of contract loss and a loss of associated revenues and profit.**

*See* Dkt. No. 47, Ex. B at S-10 (emphasis added).

Further, the Preliminary Prospectus Supplement stated

> The loss of a relationship with one or more of our discount card brokers could negatively impact our business. We contract with over 80 marketing companies that provide pharmacy discount cards to the uninsured and underinsured. Depending on the amount of revenue generated by any broker agreement, **one or more terminations could have a material and adverse effect on our consolidated financial statements.** The brokers we use are typically small, privately held marketing companies. The two largest brokers generate a significant percentage of the discount card

9

> business. We are unaware of any intention by a significant discount card broker to terminate or not renew an agreement with us.

*See id.* at S-14 (emphasis added).

Plaintiffs therefore allege that the Preliminary Prospectus Supplement warned potential investors in the April 2013 Offering that the Company's PBM Services revenue could be "materially and adversely" affected by either the loss of a PBM client or the loss of broker sales and a subsequent decline in discount card volume business. *See* CCAC ¶ 308. Plaintiffs allege as well that the Preliminary Prospectus Supplement did not warn, however, that, as described in the complaint, both of these events had come to pass mere weeks before the public offering. *See id.* ¶¶ 15, 16, 120, 135, 159, 307-310. As the Court explained in its prior Order, Plaintiffs have adequately alleged that these were not forward-looking statements or cautionary language because, by April 16, 2013, they described what had become a *fait accompli*. *See* Order at 45. "Cautionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired." *Romach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004) (citing *In re Prudential Secs. Inc. P'ships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996)). Further, as the Court also already explained in the Order, even if BioScrip initially had no affirmative obligation to disclose these adverse intra-quarterly developments, Plaintiffs plausibly allege that they became obliged to do so after making affirmative statements in the Preliminary Prospectus Supplement that would otherwise be misleading without disclosure. *See* Order at 34. Simply put, statements that PBM Services "could be materially and adversely affected" or that something "could have a material and adverse effect on the segment," *see* Dkt. No. 43, Ex. B at S-10, S-14, may be misleading where the pleadings allege the materially adverse event had already come to pass. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 518 (S.D.N.Y. 2013)

("Facebook's risk warnings are alleged to be more than mere opinions, they were misstatements of present fact, warning that something 'may' occur when that event 'had' already occurred").

Defendants' argument hinges on the narrow proposition that a particular statement concerning *brokers* cannot be misleading about *clients*. But this position neglects the requirement that the Court consider the offering materials in their entirety and in context. It is paradigmatic that "[t]he central inquiry in determining whether a prospectus is materially misleading" is "whether defendants' representations, taken together and in context, would have [misled] a reasonable investor about the nature of the investment." *I. Meyer Pincus*, 936 F.2d at 761. *See also Miller v. Lazard, Ltd.*, 473 F. Supp. 2d 571, 579 (S.D.N.Y. 2007) (citing *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir. 1996)) ("In assessing whether statements provided in the prospectus are materially misleading, the prospectus must be read as a whole, not selectively or in a piecemeal fashion.") Reading the prospectus here as a whole, in light of the facts alleged in the CCAC and resolving all inferences in favor of the Plaintiffs, the Court concludes that Plaintiffs have adequately alleged that a failure to disclose the challenges troubling the PBM Services segment rendered portions of the April 2013 offering materials misleading. Accordingly, the Court reaffirms its prior conclusion that "the Plaintiffs have adequately stated a claim under both § 11 and § 12(a)(2) as to the April 2013 offering and its representations concerning the state of BioScrip's PBM Services segment." *See* Order at 45.

## IV. CONCLUSION

In sum, Defendants' motion for reconsideration is DENIED. This resolves Dkt. No. 75. An initial pretrial conference is presently scheduled for June 19, 2015 in this matter. *See* Dkt. No. 72. The parties are ordered to comply with the instructions provided in the Court's April 2, 2015 Notice of Initial Pretrial Conference. *See* Dkt. No. 69.

SO ORDERED.

Dated: June 5, 2015
       New York, New York

_____
ALISON J. NATHAN
United States District Judge