**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BIOSCRIP, INC. SECURITIES LITIGATION | No. 13-cv-6922-AJN |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT, (II) PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

Date: December 18, 2015

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

I. PRELIMINARY STATEMENT ..... 1

II. NATURE OF THE ACTION ..... 2

III. PROCEDURAL HISTORY ..... 3

IV. ARGUMENT ..... 6

A. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..... 6

1. The Settlement Is The Result Of Good Faith, Arm's-Length Negotiations Conducted By Well-Informed And Experienced Counsel ..... 7

2. The Settlement Does Not Favor Lead Plaintiff Or Any Other Segment Of The Class ..... 9

3. The Settlement Falls Within The Range Of Possible Approval ..... 11

B. CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE ..... 13

1. The Settlement Class Satisfies The Requirements Of Rule 23(a) ..... 15

a. The Settlement Class Members Are Too Numerous To Be Joined ..... 15

b. There Are Common Questions Of Law And Fact ..... 16

c. Plaintiffs' Claims Are Typical Of Those Of The Settlement Class ..... 17

d. Plaintiffs Will Fairly And Adequately Protect The Interests Of The Settlement Class ..... 19

2. The Settlement Class Satisfies The Requirements Of Rule 23(b)(3) ..... 20

a. Common Legal And Factual Questions Predominate ..... 20

b. A Class Action Is Superior To Other Methods Of Adjudication ..... 22

C. THE COURT SHOULD APPOINT LEAD COUNSEL AS COUNSEL FOR THE CLASS ..... 22

D. NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ..... 23

V. PROPOSED SCHEDULE OF SETTLEMENT EVENTS ........................................ 24

VI. CONCLUSION ........................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ....................14

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) ....................11

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
293 F.R.D. 459 (S.D.N.Y. 2013) ....................6

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ....................15, 21, 22

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013) ....................19

*In re AOL Time Warner, Inc.*,
No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ....................10

*In re BankAtlantic Bancorp, Inc.*,
No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd*, 688 F.3d 713 (11th Cir. 2012) ....................12

*In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ....................8

*In re BioScrip, Inc. Sec. Litig.*,
95 F. Supp. 3d ....................4, 11, 23

*In re Bioscrip, Inc. Sec. Litig.*,
No. 13-CV-6922 AJN, 2015 WL 3540736 (S.D.N.Y. June 5, 2015) ....................5

*Bourlas v. Davis Law Assocs.*,
237 F.R.D. 345 (E.D.N.Y. 2006) ....................15, 16

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
504 F.3d 229 (2d Cir. 2007) ....................15, 18

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ....................6

*In re Citigroup, Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013) ....................10

*City of Providence v. Aeropostale, Inc.*,
No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)....................23, 24

*Cohen v. J.P. Morgan Chase & Co.*,
262 F.R.D. 153 (E.D.N.Y. 2009)........................................................................7

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)..............................................................................15

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)................................................................................8

*Dallas v. Alcatel-Lucent USA, Inc.*,
No. 09-14596, 2013 WL 2197624 (E.D. Mich. May 20, 2013) ..............................11

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)..............................................................................14

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992)..............................................................................19

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)........................................................................................12

*Faig v. Bioscrip, Inc.*,
No. 13 CIV. 06922 AJN, 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) ....................3, 20, 23

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ....................................................................8, 14

*In re Globalstar Sec. Litig.*,
No. 01 Civ 1748(PKC), 2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ..........................16

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ......................................................................14

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) ..........................................................................7

*In re Initial Pub. Offering Sec. Litig.*,
260 F.R.D. 81 (S.D.N.Y. 2009) ........................................................................15

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)....................14, 18, 21

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................................10

*Menkes v. Stolt-Nielsen S.A.*,
270 F.R.D. 80 (D. Conn. 2010)..........................................................................24

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ....................9

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ....................6, 7

*In re Oxford Health Plans, Inc.*,
191 F.R.D. 369 (S.D.N.Y. 2000) ....................16

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.) *aff'd*, 117 F.3d 721 (2d Cir. 1997)....................6

*In re Pfizer Inc. Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) ....................16, 18

*In re Platinum and Palladium Commodities Litig.*,
No. 10CV3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014)....................7

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ....................19

*Pub. Emps'. Ret. Sys. of Miss. v. Merrill Lynch*,
277 F.R.D. 97 (S.D.N.Y. 2011) ....................20

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015)....................20

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ....................12

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)....................15, 18

*Ross v. Abercrombie & Fitch Co.*,
257 F.R.D. 435 (S.D. Ohio 2009) ....................17

*In re Sadia, S.A. Sec. Litig.*,
269 F.R.D. 298 (S.D.N.Y. 2010) ....................16, 18, 19

*Seijas v. Republic of Argentina*,
606 F.3d 53 (2d Cir. 2010)....................21

*Shapiro v. JPMorgan Chase & Co.*,
No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)....................19

*In re Stock Exchanges Options Trading Antitrust Litig.*,
No. 99 CIV. 0962 (RCC), 2005 WL 1635158 (S.D.N.Y. July 8, 2005)....................6

*Sykes v. Mel S. Harris and Associates LLC, et al.*,
780 F.3d 70 (2d Cir. 2015)....................21

*In re Twinlab Corp. Sec. Litig.*,
187 F. Supp. 2d 80 (E.D.N.Y. 2002) ....................18

*In re Veeco Instruments, Inc. Sec. Litig.*,
235 F.R.D. 220 (S.D.N.Y. 2006) ....................18, 21

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695 (CM) 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ....................9

*In re Vivendi Universal, S.A. Sec. Litig.*,
242 F.R.D. 76 (S.D.N.Y. 2007) ....................17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)....................6, 9, 11

*In re Warner Chilcott Ltd. Sec. Litig.*,
No. 06 CIV. 11515(WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)....................23, 24

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)....................14

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003) ....................19, 21

**STATUTES**

Private Litigation Securities Reform Act, 15 U.S.C. §§ 77z-1, 78u-4 .................... *passim*

Securities Act of 1933, 15 U.S.C. §§ 77a-77mm....................4, 13, 17, 21

Securities Exchange Act of 1934, §§ 15 U.S.C. 78a-78kk ....................3, 4, 17, 21

**OTHER AUTHORITIES**

Rule 10b-5, 17 C.F.R. 240.10b-5....................3

Fed. R. Civ. P. 23 .................... *passim*

Lead Plaintiff, Fresno County Employees' Retirement Association ("Lead Plaintiff" or "Fresno"), respectfully submits this memorandum of law in support of its unopposed motion, pursuant to Fed. R. Civ. P. 23, for entry of the Parties' agreed-upon Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), which is attached to the Notice of Motion as Exhibit 2.[1]

## I. PRELIMINARY STATEMENT

Pursuant to the Stipulation, Defendants have agreed to pay, or cause to be paid, $10,900,000 in cash (the "Settlement Amount") for the benefit of the Settlement Class in exchange for the settlement of all claims asserted in the Action, the dismissal with prejudice of the Consolidated Class Action Complaint filed on February 19, 2014 (the "CAC"), and the release of all related claims asserted by Lead Plaintiff and the members of the Settlement Class against the Defendants and their affiliated persons and entities. As set forth below, the Settlement: (i) is the product of good-faith, arm's-length negotiations between experienced counsel, including significant mediation efforts conducted by former United States District Judge Layn Phillips; (ii) does not improperly grant preferential treatment to class representatives or segments of the class; and (iii) represents a substantial recovery that plainly falls well within the range of possible approval. Preliminary approval is, therefore, appropriate.

Entry of the Preliminary Approval Order will begin the process for approval of the proposed Settlement, which first provides for notice of the Settlement's terms and conditions to be sent to investors who are believed to be members of the Settlement Class. A final approval hearing (the "Settlement Hearing") will then be conducted so that the Parties and Settlement Class

---

[1] All capitalized terms used herein that are not otherwise defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated as of December 18, 2015 (the "Stipulation"), which is attached as Exhibit 1 to the Notice of Motion.

Members may present arguments and evidence for and against the terms, and the Court will then make a final determination as to whether the proposed settlement is fair, reasonable and adequate. To facilitate this process, the proposed Preliminary Approval Order will, among other things:

(i) preliminarily approve the terms of the Settlement set forth in the Stipulation;

(ii) preliminarily certify the Settlement Class, for settlement purposes only;

(iii) approve the form and content of the Notice, Claim Form and Summary Notice attached as Exhibits 1, 2 and 3 to the Preliminary Approval Order;

(iv) find that the procedures for distribution of the Notice and Claim Form and publication of the Summary Notice constitute the best notice practicable under the circumstances, and comply with the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

(v) set a schedule and procedures for: disseminating the Notice and publication of the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement, the Plan of Allocation and/or Lead Counsel's application for attorneys' fees and litigation expenses; submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

## II. NATURE OF THE ACTION

This is a securities class action brought on behalf of all persons and entities who purchased the common stock of BioScrip, Inc. ("BioScrip" or the "Company") from November 9, 2012 through November 6, 2013, inclusive, and were damaged thereby. The CAC principally alleges that BioScrip, a home-healthcare and pharmaceuticals company, violated the federal securities laws by simultaneously perpetrating two deceptive schemes on its investors. Pursuant to the first – the "Exjade Scheme" – Defendants allegedly made materially false and misleading statements and failed to disclose material facts about the government's investigation into, and BioScrip's alleged participation in, a kickback scheme relating to a drug called Exjade. Exjade was one of BioScrip's main sources of revenue, and the Company's participation in the scheme may have violated state and federal laws and jeopardized its ability to participate in Medicare, Medicaid and

other government-funded programs. These programs accounted for one-quarter to one-third of BioScrip's annual revenue.

In the second scheme – the "PBM Scheme" – the Company allegedly concealed the fact that its pharmacy benefit management ("PBM") business segment, which accounted for nearly 20% of its revenue, was collapsing throughout 2013. The CAC alleges that both the government investigation and the dying business segment put the Company at risk, but the Company refused to disclose the existence of either issue to investors until it was absolutely necessary. When the truth was eventually revealed, the price of BioScrip's common stock declined precipitously, damaging investors who had purchased the stock at artificially inflated prices.

## III. PROCEDURAL HISTORY

Beginning on September 30, 2013, multiple putative securities class action complaints were filed in the United States District Court for the Southern District of New York (the "Court"). In accordance with the PSLRA, 15 U.S.C. §§ 77z-1, 78u-4, as amended, notice to the public was issued stating the deadline by which putative class members could move the Court for appointment as lead plaintiff. By Order dated December 19, 2013, the Court consolidated the related actions, appointed Fresno to serve as Lead Plaintiff for the consolidated action, and approved Lead Plaintiff's selection of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as Lead Counsel. *See Faig v. Bioscrip, Inc.*, No. 13 CIV. 06922 AJN, 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013).

On February 19, 2014, Lead Plaintiff filed and served the highly detailed 110-page CAC. In the CAC, Lead Plaintiff and additional named plaintiff West Palm Beach Police Pension Fund (collectively, "Plaintiffs") asserted claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against BioScrip and certain of the Individual Defendants, and under Section 20(a) of the Exchange Act against Kohlberg &

Co., LLC ("Kohlberg") and certain of the Individual Defendants. The Complaint also asserted claims under Section 11 of the Securities Act of 1933 (the "Securities Act") against BioScrip, the Individual Defendants and the Underwriter Defendants, under Section 12(a)(2) of the Securities Act against BioScrip and the Underwriter Defendants, and under Section 15 of the Securities Act against the Individual Defendants and Kohlberg. The Securities Act claims were based on secondary offerings of BioScrip common stock in April and August 2013.

On April 28, 2014, Defendants filed and served their motions to dismiss the CAC. On June 27, 2014, Lead Plaintiff filed and served its papers in opposition to the motions, and on July 28, 2014, Defendants filed and served their reply papers.

On March 31, 2015, the Court denied Defendants' motions to dismiss the CAC in part, and granted the motions in part. *See In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d. 711 (S.D.N.Y. 2015). The Court sustained Plaintiffs' 10(b) claims based on Defendants' false statements and omissions concerning the Exjade Scheme. It also sustained Plaintiffs' Securities Act claims with respect to the April 2013 offering based on the offering documents' misrepresentations and omissions concerning both the PBM Scheme and the Exjade Scheme, as well as Plaintiffs' Securities Act claims with respect to the August 2013 offering based on the offering documents' misrepresentations and omissions concerning only the Exjade scheme. Finally, the Court sustained Plaintiffs' control-person claims against the Individual Defendants under § 15 of the Securities Act and § 20(a) of the Exchange Act.[2]

---

[2] The Court dismissed Plaintiffs' 10(b) claims based on misrepresentations concerning the PBM Scheme and their Securities Act claims with respect to the August 2013 offering based on those misrepresentations. The Court also dismissed Plaintiffs' control-person claims under § 15 of the Securities Act and § 20(a) of the Exchange Act against Kohlberg for inadequately alleging that Kohlberg controlled BioScrip.

Following the Court's decision, on April 14, 2015, Defendants moved for reconsideration of the denial of their motion to dismiss Plaintiffs' Securities Act claims with respect to the April 2013 offering documents' misrepresentations and omissions concerning the PBM Scheme. Lead Plaintiff filed and served its papers in opposition to the motion for partial reconsideration on April 28, 2015, and on May 8, 2015, Defendants filed and served their reply papers. On June 5, 2015, the Court denied Defendants' motion for partial reconsideration. *See In re Bioscrip, Inc. Sec. Litig.*, No. 13-CV-6922 AJN, 2015 WL 3540736, at *7 (S.D.N.Y. June 5, 2015)

On May 21, 2015, Defendants filed their answers and affirmative defenses to the CAC. Shortly thereafter, in June 2015, discovery commenced. Among other things, the parties served and responded to document requests, negotiated a confidentiality order, met and conferred on search terms and the scope of production, and Defendants produced approximately 800,000 pages of documents, which Lead Counsel reviewed and analyzed. Discovery was on-going at the time of settlement.

In September 2015, the parties participated in a mediation with former United States District Court Judge Layn Phillips. Despite their best efforts, the parties were unable to settle the case. Nevertheless, Judge Phillips continued to work with the parties, and in October 2015, the Parties reached an agreement in principle to settle the Action. The terms of the Settlement were subsequently negotiated and are set forth in the Stipulation.

In light of the substantial benefit achieved ($10,900,000 for the benefit of the Settlement Class), the significant costs and risks of continuing litigation through trial and appeals, and the fact that the proposed Settlement is the result of arm's-length negotiations by experienced counsel overseen by a well-respected mediator, it is respectfully submitted that the Settlement warrants preliminary approval so that notice can be provided to the Settlement Class. It is further submitted

that the Court should, preliminarily and for purposes of the Settlement only, certify the Settlement Class, appoint Plaintiffs as class representatives and appoint Lead Counsel as class counsel.

## IV. ARGUMENT

### A. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013). "The decision to grant or deny such approval lies squarely within the discretion of the trial court, and this discretion should be exercised in light of the general judicial policy favoring settlement."[3] *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y.) *aff'd*, 117 F.3d 721 (2d Cir. 1997); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.").

"Preliminary approval is generally the first step in a two-step process before a class-action settlement is approved." *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99 CIV. 0962 (RCC), 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005). "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). "Once preliminary approval is bestowed, the second step of the process ensues: notice is given to the

[3] Unless otherwise noted, all emphasis is added and internal citations are omitted in quotations.

class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *Id*.

In conducting a preliminary approval inquiry, a court considers both the '"negotiating process leading up to the settlement, *i.e*., procedural fairness, as well as the settlement's substantive terms, *i.e*., substantive fairness.'" *In re Platinum and Palladium Commodities Litig.*, No. 10CV3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014). "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007); *see also Platinum & Palladium*, 2014 WL 3500655, at *11; *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009).

As demonstrated below, the proposed Settlement merits preliminary approval because it is both procedurally and substantively fair.

### 1. The Settlement Is The Result Of Good Faith, Arm's-Length Negotiations Conducted By Well-Informed And Experienced Counsel

Following the Court's decisions on Defendants' motions to dismiss and motion for reconsideration and the commencement of discovery, the Parties began exploring the possibility of settlement with the assistance of Judge Phillips, a highly experienced mediator of securities class actions. The mediation with Judge Phillips involved the exchange of opening and reply mediation briefs, responding to questions presented by Judge Phillips and damages presentations by each party. The submissions addressed both liability and damages, and included damages analyses conducted by the parties' respective experts. After the conclusion of the in-person mediation session and many weeks of follow-up negotiations, Judge Phillips made a mediator's

recommendation that the Action be settled for $10,900,000, which the parties accepted.

The arm's-length nature of the settlement negotiations, and the involvement of an experienced mediator like Judge Phillips, supports the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding a settlement fair where the parties engaged in "arm's length negotiations," including mediation before "retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (a settlement was entitled to a presumption of fairness where it was the product of "arms-length negotiation" facilitated by Judge Phillips, "a respected mediator").

In addition, the parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching the agreement to settle. Lead Plaintiff had conducted an extensive investigation prior to filing the CAC, which included interviews with former BioScrip employees and a thorough review of publicly available information; had prepared the highly detailed 110-page CAC; had briefed Defendants' motions to dismiss and motion for reconsideration; had consulted with damages and industry experts; had reviewed and analyzed approximately 800,000 pages of documents produced by the Defendants; and had the benefit of mediation statements and presentations by Defendants setting forth their arguments on liability, damages, and loss causation. As a result, Lead Plaintiff and Lead Counsel had an adequate basis for assessing the strength of the Settlement Class's claims and Defendants' defenses when they entered into the Settlement.

Moreover, Lead Plaintiff, which is a sophisticated institutional investor of the type favored by Congress when passing the PSLRA, supervised this litigation and recommended that the Settlement be approved. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("under the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness . . . Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement.'"). Lead Counsel, which has extensive experience in prosecuting securities class actions in this District and around the country, has also concluded that the Settlement is in the best interests of the Settlement Class. *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

The fact that the Settlement is the product of an arm's-length negotiation overseen by an experienced mediator, has been approved by a sophisticated Lead Plaintiff, and was entered into by experienced and informed counsel, demonstrates that the processes by which the Settlement was reached is procedurally fair. It is, therefore, presumptively fair, reasonable and adequate. *See Wal-Mart*, 396 F.3d at 116 ("presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery").

### 2. The Settlement Does Not Favor <u>Lead Plaintiff Or Any Other Segment Of The Class</u>

The Settlement does not provide preferential treatment to Lead Plaintiff or any other Settlement Class Members. Indeed, the proposed Plan of Allocation, which is set forth in the

Notice (¶¶ 46-64) and was developed by Lead Plaintiff's damages expert in consultation with Lead Counsel, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase of BioScrip common stock during the Settlement Class Period for which adequate documentation is provided. The calculation of Recognized Loss Amounts is explained in detail in the Notice and will be based on several factors, including when the BioScrip common stock was purchased and sold, the purchase and sale price of the stock, the estimated artificial inflation of BioScrip common stock as determined by Lead Plaintiff's damages expert, and the strength of the claims. Claimants who did not hold their BioScrip shares over one of the disclosure dates in the Plan of Allocation – that is, those who sold their shares before the first disclosure date or who purchased and then sold all their shares between two such disclosure dates – will have no Recognized Loss Amount as to those transactions under the Plan of Allocation because the level of alleged artificial inflation would be the same on their date of purchase and date of sale. The sum of a Claimant's Recognized Loss Amounts is the Claimant's "Recognized Claim." The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. Similar plans have repeatedly been approved by the Courts. *See In re Citigroup, Inc. Sec. Litig.,* 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010); *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *17 (S.D.N.Y. Apr. 6, 2006).

Because all Settlement Class Members are treated the same under the proposed Plan of Allocation, this factor supports preliminary approval of the proposed Settlement.

### 3. <u>The Settlement Falls Within The Range Of Possible Approval</u>

"The determination of a reasonable settlement is not susceptible to mathematical precision. Rather, there is a range of reasonableness for a settlement, and it should be preliminarily approved if it falls within the range of possible approval." *Dallas v. Alcatel-Lucent USA, Inc.,* No. 09-14596, 2013 WL 2197624, at *9 (E.D. Mich. May 20, 2013); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) ("there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."). In making this determination, the adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

While Lead Plaintiff believes that the claims asserted against Defendants were meritorious, it recognizes that this Action presented a number of substantial risks to establishing both liability and damages. As an initial matter, Lead Plaintiff would have faced significant hurdles in proving to the ultimate finder of fact that the statements made by Defendants were materially false and misleading, as well as scienter. Defendants strenuously argued on the motions to dismiss that their alleged misstatements were not materially misleading and that even if they made materially misleading statements, they did not do so intentionally or recklessly. Even though the Court sustained the CAC, it found that several of the alleged misstatements were not actionable and that Lead Plaintiff had failed to adequately allege scienter with respect to some statements. *See In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711 (S.D.N.Y. 2015). Had the litigation continued, there is simply no guarantee that Lead Plaintiff would have been able to establish these elements with respect to the remaining statements.

Lead Plaintiffs would also have confronted considerable challenges in establishing loss causation and damages. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). While Lead Plaintiff would have argued that the declines in BioScrip's stock price were attributable to corrections of the alleged misstatements and omissions concerning the Exjade and PBM Schemes, Defendants would have asserted that the decline was due to other negative news, and that even if some portion of the decline in BioScrip's stock price was caused by corrective disclosures, damages were minimal. Simply put, the parties held extremely disparate views with respect to damages. Had Defendants' arguments been accepted in whole or part, they could have eliminated or, at a minimum, dramatically limited any potential recovery.

Moreover, the fact that Lead Plaintiff had prevailed, in part, against Defendants' motions to dismiss did not guarantee victory. Lead Plaintiff still faced the substantial burdens of a class certification motion, summary judgment motions, trial and likely appeals – a process which could possibly extend for years and might lead to a smaller recovery, or no recovery at all. Indeed, even prevailing at trial would not have guaranteed a recovery larger than the $10.9 million settlement. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *20-*22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law because there was insufficient evidence to support a finding of loss causation), *aff'd*, 688 F.3d 713 (11th Cir. 2012).

Finally, very real ability-to-pay issues are present in this case. In January 2014, BioScrip settled the government enforcement action concerning the alleged Exjade kickback scheme, which involved tens of millions of dollars of purportedly fraudulent Medicare and Medicaid reimbursement claims, for $15 million. The government stated that it sought higher damages and penalties, but that the settlement was limited to that amount because it was the maximum BioScrip was able to pay. Since it settled with the government, BioScrip's financial condition has only worsened. As of June 30, 2015, the Company had cash and cash equivalents of only $1.2 million, long-term debt of over $418 million, and a stockholders' deficit of $43.3 million. The Company had a net loss of $244.8 million in the second quarter of 2015, and its stock is currently trading at less than $2 per share. As for the Individual Defendants, their personal assets are presumably a small fraction of the class's damages. While the underwriters of the two public offerings during the Class Period are presumably able to pay any judgment against them, they can only be held liable for the claims based on the two offerings under the Securities Act, and those claims account for a minority of the class's damages. Thus, any recovery would likely be funded out of BioScrip's limited officers' and directors' insurance, a portion of which has already been used for defense costs in this and other pending litigation, and would have continued wasting if this case was not settled.

Given these significant litigation risks, the Settlement is an excellent result for the Settlement Class, and Lead Plaintiff and Lead Counsel respectfully submit that preliminary approval is appropriate.

### B. CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In granting preliminary settlement approval, the Court should also preliminarily certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules

of Civil Procedure. The proposed Settlement Class, which has been stipulated to by the parties, consists of:

> all persons and entities who purchased the common stock of BioScrip during the period from November 9, 2012 through November 6, 2013, inclusive (the "Settlement Class Period"), and were damaged thereby.

Stipulation ¶ 1(ss). Excluded from the Settlement Class are: (i) Defendants; (ii) members of the immediate families of the Individual Defendants; (iii) the subsidiaries of BioScrip, the Underwriter Defendants, and Kohlberg; (iv) any persons who served as partners, control persons, officers, and/or directors of BioScrip, the Underwriter Defendants, or Kohlberg during the Settlement Class Period and/or at any other relevant time; (v) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (vi) Defendants' liability insurance carriers; and (vii) the legal representatives, heirs, successors, and assigns of any such excluded party. *Id*. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court. *Id*.

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 186 (S.D.N.Y. 2012) (quoting *In re Giant Interactive*, 279 F.R.D. at 158).

A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). However, the

manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

As demonstrated below, the proposed Settlement Class satisfies all the applicable requirements of Rule 23(a) and Rule 23(b)(3).

### 1. <u>The Settlement Class Satisfies The Requirements Of Rule 23(a)</u>

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

#### a. The Settlement Class Members Are Too Numerous To Be Joined

The first element of the four-part threshold for class certification requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007). In this Circuit, numerosity is presumed when a class consists of 40 or more members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Initial Pub. Offering Sec. Litig.,* 260 F.R.D. 81, 90 (S.D.N.Y. 2009). "While 'a precise quantification of [the] class is not required, some evidence . . . or [a] reasonabl[e] estimate [of] the number of class members' must be provided." *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 350-51 (E.D.N.Y. 2006) (ellipses and alterations in original). In making this

determination, "the court may 'make some common sense assumptions' and 'rely on reasonable inferences drawn from the available facts.'" *Id.* at 351. Consequently, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).

Here, the Settlement Class easily satisfies the numerosity requirement. The Settlement Class is comprised of purchasers BioScrip common stock during a roughly one year period. As of November 7, 2013, BioScrip had 68,109,366 shares of common stock outstanding, with an average daily trading volume during the Settlement Class Period of 759,747 shares. Thus, while the precise number of Settlement Class Members cannot be identified with specificity at this time, it is likely to be at least in the hundreds, if not thousands. Accordingly, the Settlement Class is sufficiently numerous that Rule 23(a)(1) is satisfied.

**b. There Are Common Questions Of Law And Fact**

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Securities fraud cases like this one easily meet the commonality requirement, which is satisfied where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *see In re Globalstar Sec. Litig.*, No. 01 Civ 1748(PKC), 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues."); *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met.").

Here, as alleged in the CAC, the common questions of law and fact include:

- whether Defendants' conduct violated the federal securities laws;
- whether the SEC filings, press releases, and other public statements disseminated to the investing public during the Settlement Class Period contained material misstatements or omitted to state material information;
- whether the Shelf Registration Statement and the prospectuses for the April 2013 offering and August 2013 offering contained material misstatements or omitted to state material information;
- whether and to what extent the market price of BioScrip's common stock was artificially inflated during the Settlement Class Period due to the omissions and misstatements complained of in the Action;
- whether, with respect to Plaintiffs' claims under the Exchange Act, defendants named in those claims acted with scienter;
- whether, with respect to Plaintiffs' claims under the Exchange Act, reliance may be presumed pursuant to the fraud-on-the-market doctrine or *Affiliated Ute*;
- whether, with respect to Plaintiffs' claims under the Securities Act, defendants named in those claims can sustain their burden of establishing an affirmative defense under the applicable statute; and
- whether the members of the class have sustained damages as a result of the conduct complained of in the Action, and if so, the proper measure of damages.

*See* CAC ¶ 232. Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met. *See In re Vivendi Universal, S.A. Sec. Litig.,* 242 F.R.D. 76, 84 (S.D.N.Y. 2007); *see also Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 443 (S.D. Ohio 2009) ("Questions of misrepresentation, materiality, and scienter are the paradigmatic common question[s] of law in a securities fraud class action" and are "easily satisfied.").

**c. Plaintiffs' Claims Are Typical Of Those Of The Settlement Class**

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality is established where "each class member's claim

arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States*, 504 F.3d at 245; *accord Pfizer*, 282 F.R.D. at 44; *Sadia*, 269 F.R.D. at 304-05. "Typical" does not mean "identical." *Marsh & McLennan*, 2009 WL 5178546, at *10. The critical question is whether the proposed class representatives and the class can point to a "common course of conduct" by defendants to support a claim for relief. Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Id.*; *see also Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

Here, the injuries to Plaintiffs and the other members of the Settlement Class are attributable to the same alleged course of conduct by Defendants, and liability for this conduct is predicated on the same legal theories. Plaintiffs allege that they, like the rest of the Settlement Class, paid artificially-inflated prices for BioScrip common stock during the Settlement Class Period as a result of materially misleading public statements by Defendants that violated the federal securities laws. As such, each Plaintiff "ha[s] the incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *In re Veeco Instruments, Inc. Sec. Litig.,* 235 F.R.D. 220, 238 (S.D.N.Y. 2006). The typicality requirement is, therefore, satisfied. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all class members were

allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

**d. Plaintiffs Will Fairly And Adequately Protect The Interests Of The Settlement Class**

Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is measured by two standards: (i) whether the claims of the proposed class representatives conflict with those of the class; and (ii) whether their counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014); *Sadia*, 269 F.R.D. at 305. Both prongs of the adequacy test are met here.

First, there is no antagonism or conflict of interest between Plaintiffs and the proposed Settlement Class. Plaintiffs and Settlement Class Members purchased BioScrip common stock during the Settlement Class Period and they were all injured by the same alleged materially false statements and omissions. If Plaintiffs were to prove their claims at trial, they would also prove the Settlement Class's claims. *See Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions). Thus, the interests of Plaintiffs and the other members of the Settlement Class are aligned, and they share the common objective of maximizing their recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.") (citing *Drexel*, 960 F.2d. at 291); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003)

("named plaintiffs' interests are directly aligned with those of the absent class members: they are purchasers of WorldCom equity and debt securities who suffered significant losses as a result of the investments").

Second, Plaintiffs have demonstrated their commitment to this litigation by retaining qualified counsel. Lead Counsel has extensive experience and expertise litigating securities class action cases, as the Court recognized when approving its appointment as lead counsel for the putative class under the PSLRA. *See Faig v. Bioscrip, Inc.*, No. 13 CIV. 06922 AJN, 2013 WL 6705045, at *4 (S.D.N.Y. Dec. 19, 2013) ("Bernstein Litowitz is an experienced securities class action law firm, well qualified to act as lead counsel in this case."); *see also Pub. Emps'. Ret. Sys. of Miss. v. Merrill Lynch*, 277 F.R.D. 97, 110 (S.D.N.Y. 2011) ("It is also beyond serious dispute that class counsel – Bernstein Litowitz Berger & Grossmann LLP – is qualified and capable of prosecuting this action."). Accordingly, Rule 23(a)(4) is satisfied.

**2. <u>The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)</u>**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies these requirements.

**a. Common Legal And Factual Questions Predominate**

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). In making this determination, "a court's inquiry is directed toward whether the issue of liability is common

to the members of the class." *Veeco*, 235 F.R.D. at 240. "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues." *Id*. Indeed, "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010); *Sykes v. Mel S. Harris and Associates LLC, et al.*, 780 F.3d 70, 88 (2d Cir. 2015). Thus, "if the liability issue is common to the class, common questions are held to predominate over individual questions." *Marsh & McLennan*, 2009 WL 5178546, at *11. This "test [is] readily met in certain cases alleging . . . securities fraud." *Amchem,* 521 U.S. at 625.

Here, with respect to the Exchange Act claims, "the critical issues for establishing Defendants' liability include whether the Defendants (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury. Each of these issues is susceptible of generalized proof and, accordingly, the predominance requirement of Rule 23(b)(3) is satisfied." *Marsh & McLennan*, 2009 WL 5178546, at *11; *see also Veeco*, 235 F.R.D. at 240 ("[Q]uestions of fact regarding the content and implications of defendants' statements and defendants' intent in making these statements are central to the claims of each member of the putative class. Any individual issues will necessarily be secondary."). Likewise, with the Securities Act claims, the common questions – (1) whether the offering materials contained material misstatements or omissions and (2) whether Defendants could bear their burden of establishing defenses of due diligence or negative causation – predominate over any individual issues. *See WorldCom*, 219 F.R.D. at 288, 293.

**b. A Class Action Is Superior To Other Methods Of Adjudication**

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3).

Here, there is no evidence that putative class members have any interest in bringing separate individual actions, and the parties are unaware of any other securities fraud litigation involving the same issues. Furthermore, it is desirable to concentrate the claims in this Court as BioScrip is located in this district, much of the allegedly wrongful conduct emanated from this district, and the Court is already familiar with the factual and legal issues in the case. Finally, since this is a request for class certification only for purposes of settlement, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

In sum, the proposed Settlement Class meets all of the requirements of Rule 23(a) and 23(b)(3) and should be preliminarily certified for purposes of the Settlement.

**C. THE COURT SHOULD APPOINT LEAD COUNSEL AS COUNSEL FOR THE CLASS**

A court that certifies a class must also appoint class counsel. *See* Fed. R. Civ. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge

of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

BLB&G was appointed Lead Counsel by order dated December 19, 2013 (*see Faig,* 2013 WL 6705045, at *4), and has done considerable work identifying and investigating potential claims in this matter – as evidenced by the 110-page CAC Lead Plaintiff filed on February 19, 2014. The firm has also devoted substantial time, effort and resources to the tenacious prosecution of this Action, and demonstrated its knowledge of the applicable law in opposing the motions to dismiss and motion for reconsideration. *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711 (S.D.N.Y. 2015), *reconsideration denied*, *In re Bioscrip, Inc. Sec. Litig.*, No. 13-CV-6922 AJN, 2015 WL 3540736 (S.D.N.Y. June 5, 2015). For these reasons, among others, Lead Plaintiff respectfully requests that the Court appoint BLB&G to serve as Class Counsel.

### D. <u>NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED</u>

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval the Claims Administrator will mail the Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with reasonable effort, including through the records maintained by BioScrip of common stock holders during the Settlement Class Period.[4] The Claims Administrator will also utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice. The Notice will

---

[4] Lead Plaintiff requests that the Court approve retention of A.B. Data, Ltd., as the claims administrator for this case. Lead Counsel negotiated competitive and favorable terms with A.B. Data, and A.B. Data has successfully administered numerous complex securities class action settlements, including *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *2 (S.D.N.Y. May 9, 2014) ($15 million settlement); and *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 CIV. 11515(WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008) ($16.5 million settlement).

advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses. The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class. In addition to the mailing of the Notice and Claim Form, the Summary Notice will be published in *Investor's Business Daily* and transmitted over the *PR Newswire*.

The proposed form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA. *See, e.g., City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *2; *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 105-06 (D. Conn. 2010); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

Accordingly, Lead Plaintiff respectfully submits that the proposed notice and related procedures are appropriate and should be approved.

## V. PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiff respectfully proposes the schedule set forth below for Settlement-related events. The timing of events is determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled. If the Court agrees with the proposed schedule, Lead Plaintiff requests that Court schedule the Settlement Hearing for a date at least 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice and Claim Form to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶ 9(b)) | Up to 20 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 9(d)) | Up to 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶ 28) | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections (Preliminary Approval Order ¶¶ 15, 19) | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 28) | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing (Preliminary Approval Order ¶ 5) | 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶ 12) | 120 calendar days after the Notice Date |

## VI. CONCLUSION

For the forgoing reasons, Lead Plaintiff respectfully requests that the Court grant the requested relief.

Dated: December 18, 2015

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Hannah G. Ross*
Hannah G. Ross
Jai Chandrasekhar
1251 Avenue of the Americas
New York, NY 10020
Tel.: (212) 554-1400
Fax: (212) 501-0300
Hannah@blbglaw.com

Jai@blbglaw.com

*Counsel for Lead Plaintiff Fresno County Employees' Retirement Association and Lead Counsel for the Settlement Class*

**SAXENA WHITE P.A.**
Joseph E. White, III
Lester R. Hooker
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
Tel: 561 394-3399
Fax: 561 394-3382
jwhite@saxenawhite.com
lhooker@saxenawhite.com

*Counsel for Additional Plaintiff West Palm Beach Police Pension Fund*

#940952